**Charles E. ZILLIOT, Appellant,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security.\***

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 24, 2002.

Opinion filed Feb. 5, 2002.

---

\* (Pursuant to F.R.A.P. 43(C))

Before NYGAARD, and STAPLETON, Circuit Judges, and SLEET, District Judge.**

## MEMORANDUM OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant Charles Zilliot claims entitlement to Disability Insurance Benefits based on a bulging low back disc, a herniated cervical disc C6–C7, swelling and pain in both shoulders, and depression. The alleged onset date was January 13, 1994, the date when Zilliot last worked. The ALJ determined that his "chronic impingement syndrome of both shoulders and the disorder of his back (both discogenic and degenerative)" were "severe impairments that did not meet the listed criteria." The ALJ further concluded that although he is unable to return to his prior employment as a yard shifter or laborer, he is able to make an adjustment to other work that exists in significant numbers in the national economy. With respect to Zilliot's residual functional capacity the ALJ made the following findings:

4. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the medical history, the reports of the treating and examining practitioners, and the findings made on examination.

5. The claimant retains the residual functional capacity to perform light work not requiring lifting in excess of 10 pounds.

6. The claimant's capacity for light work is reduced by his inability to perform tasks requiring him to reach above his chest. The claimant should avoid work requiring repetitive pushing or pulling with his arms, climbing or balancing activities. The claimant also should avoid work activity requiring more than occasional bending, stooping, or crouching.

\*       \*       \*

12. Although the claimant is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a cashier, information clerk, inventory clerk, parking lot attendant, and hand packer. These jobs exist in significant numbers throughout the national economy. A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

App. 28–29.

The Appeals Board affirmed the ALJ's denial of benefits. We must affirm unless we find that the findings of the Commissioner are not supported by substantial evidence.

Zilliot contends that the ALJ erred (1) by not giving controlling weight to the opinion of his treating orthopedist, (2) by not giving sufficiently specific reasons to rejecting his medical evidence, (3) by disbelieving his testimony with regard to the level of his pain, and (4) by relying on the testimony of the vocational expert, and (5)

** Honorable Gregory M. Sleet, United States District Judge for the District of Delaware, sitting by designation.

by failing to conclude that his condition meets the requirements of Listings 1.04 (arthritis of a major joint) and 1.13 (soft tissue injuries of an upper extremity). We have considered each of these contentions and have concluded that the findings of the Commissioner are supported by substantial evidence.

The clinical and diagnostic medical evidence supports the finding that Zilliot had no limitation on his ability to sit, stand, and walk and the other impairments resulting from his shoulder and back problems were accommodated in the hypothetical questions posed by the ALJ to the vocational expert. While Zilliot asserts that he is limited to standing and walking no more than two to three hours in an eight hour day, the January 1998 capacity assessment of Dr. Smith, his treating physician, on which this assertion is based, as the ALJ explained in some detail, contains no supporting clinical findings or other explanation for the assessed limitations on Zilliot's ability to stand or walk.

Nor can we find fault with the finding that Zilliot's subjective complaints were not entirely credible. This determination is supported by Mr. Zilliot's daily activities and his own subjective statements, including the fact that he continued to look for employment almost two years after the onset date. It is also supported by Dr. Smith's assessment that, following his shoulder surgery, Mr. Zilliot only needed to take pain medication on an occasional basis.

While, as the Commissioner acknowledges, there was inconsistency in the testimony of the vocational expert, that inconsistency was ultimately resolved during the course of her testimony. The vocational expert testified that when determining what jobs the hypothetical individual could perform, she relied only in part upon the DOT. She also relied on her own observations of how such occupations are actually performed and interviews of individuals who had performed the particular jobs in the past. The vocational expert then went on to testify that in the course of determining whether the hypothetical individual could work as an inventory clerk, she considered only clerk positions in which the individual would be required to lift nothing more than the weight of a scanning device. Moreover, even assuming that Zilliot could not perform any other job identified by the vocational expert, the evidence clearly supports the conclusion that he retained the capacity to serve as a parking lot attendant, a position that exists in significant numbers in the national economy.

The ALJ noted that in the evidence before him "no treating or examining physician ha[d] mentioned findings equivalent in severity to the criteria of any listed impairments." The only fault that Zilliot can find with this finding is that Dr. Smith reported on April 30, 1996, that he had impingement arcs at 70 to 80 degrees in both shoulders. However, this appears to be the only date on which Mr. Zilliot experienced such a restriction. In November 1996, Dr. Simkovich reported that Mr. Zilliot's right and left shoulder abduction was 110 degrees. On June 7, 1996, Dr. Smith reported that Mr. Zilliot's shoulder flexion was 120 degrees on the right and 130 degrees on the left. He also reported that Mr. Zilliot's shoulder abduction was 105 degrees on the right. In January 1997, Dr. Hurh reported that Mr. Zilliot's flexion and abduction in his left arm was ninety degrees. Thus, although Mr. Zilliot experienced painful impingement arcs at 70 to 80 degrees on April 30, 1996, there is no evidence that his abduction and forward flexion of both arms at the shoulders was consistently restricted to less than 90 degrees for a continuous period of 12 months,

as required by the Commissioner's regulations. See 20 C.F.R. § 404.1525a (2001).

The judgment of the District Court will be affirmed.